UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ROLAND MINER, III,<br><br>Plaintiff,<br><br>vs.<br><br>KANNESHA NEPT, Lt. Correctional Officer, in her individual and official capacity; SGT. PERRY, Sgt. Correctional Officer, in his individual and official capacity; WARDEN BENTING, Warden, in his individual and official capacity; and KELLY[1] WASKO, Secretary of Corrections, in her individual and official capacity,<br><br>Defendants. | 4:25-CV-04035-ECS<br><br><br>**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING** |

Plaintiff, Roland Miner, III, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docs. 1, 7. Miner moves for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 8, 9. He also filed a motion for appointment of counsel. Doc. 3.

I.      **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an

---

[1] In his complaint, Miner listed this defendant's name as "Kelly Wasko[.]" Doc. 1 at 1. This Court notes correct spelling, Kellie Wasko.

installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Miner reports average monthly deposits of $0.00 and an average monthly balance of $0.00. Doc. 9 at 1. Based on the information regarding Miner's prisoner trust account, the Court grants Miner leave to proceed in forma pauperis and waives his initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Miner must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Miner's institution. Miner remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background

Miner filed two complaints alleging the same series of facts. Docs. 1, 7.[2]  While at the Jameson Annex Facility in Sioux Falls, Miner alleges that he "was subject to a use of force while [he] was chained and shackled to a concrete slab while [he] was beat and had [his] eyes goudged [sic] by officers[.]"  Doc. 7 at 4 (capitalization in original omitted).  Miner claims that this incident did not result from his refusal to comply with orders, but was instead an attempt by Kannesha Nept and Sergeant Perry to demonstrate that "Kannesha Nept is not playing around and is making her point known that she is not a 'push over[.]' "  Id. (capitalization in original omitted).  Following this incident, Miner claims that his requests for medical staff to check his restraints were denied, which is against SD DOC policy.  Id. at 5.  Miner claims that this denial constituted deliberate indifference to his right to medical care, and was an effort by both officers to "teach [him] a lesson not to mess with them on there [sic] shift."  Id.

As a result of this force, which Miner claims "was not justified nor in a good faith effort to restore or maintain discipline," he suffered "extreme pain in [his] wrists[,]" leading him to see a neurologist for damage to his hands.  Id. at 4, 5 (capitalization in original omitted).  Miner seeks monetary damages and injunctive relief from each of the defendants, each of whom he sues in their individual and official capacities.  Id. at 2, 7.

---

[2] After he filed his first complaint on March 5, 2025, Miner filed a second complaint on March 24, 2025.  Docs. 1, 7.  The second complaint alleges essentially the same facts as those in the first complaint.  Id.  This Court liberally construes Miner's March 24 filing as an attempt to create an amended complaint, and will consider it as such.  An amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."  6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2025).  Going forward, however, if Miner wishes to submit an amended complaint, he will have to comply with the Federal Rules of Civil Procedure and this Court's Civil Local Rules of Practice.

**B.    Legal Standard**

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant

4

who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess the claims under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Official Capacity Claims for Monetary Damages

Miner sues all defendants in their official capacities and requests monetary relief. Doc. 7 at 2, 7. All defendants (Nept, Perry, Benting, and Wasko) are employees of the State of South Dakota. Doc. 7 at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Miner's official capacity claims against the defendants are construed as claims against the State of South Dakota. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. The State of South Dakota has not waived its sovereign immunity. Further, Miner seeks punitive damages against all defendants. Doc. 7 at 7. "Punitive damages are not available against government officials sued in an official capacity[.]" S.A.A. v. Geisler, 127 F.4th 1133, 1140 (8th Cir. 2025) (en banc). Thus, Miner's claims against Nept, Perry, Benting, and Wasko in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § § 1915(e)(2)(b)(iii) and 1915A(b)(2).

### 2.    Individual Capacity Claims for Injunctive Relief

Miner also sues defendants in their individual and official capacities for injunctive relief. Doc. 7 at 2; Doc. 1 at 9. "Section 1983 plaintiffs may sue individual–capacity defendants only for money damages and official–capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity."). Therefore, Miner's request for injunctive relief against the defendants in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### 3.    Individual Capacity Claims for Monetary Damages and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government–official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Miner's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." Warfield v. Hettich, 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing Ex parte Young, 209 U.S. 123, 157 (1908)). Miner requests an injunction requiring "defendants . . . to establish a safer policy on the use of force against complying inmates[.]" Doc. 1 at 9 (capitalization in original omitted). Therefore, Miner has standing to bring these claims for injunctive relief, but "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

### a.    Excessive Force Claims

Miner brings claims against all defendants for excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 7 at 4. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). In considering an Eighth Amendment claim for excessive force, the "core judicial inquiry . . . [is] whether force was applied in a good–faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). To determine whether force was used in good faith, "courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the

injury inflicted." <u>Walker v. Bowersox</u>, 526 F.3d 1186, 1188 (8th Cir. 2008) (citing <u>Hudson</u>, 503 U.S. at 7).

### i.    Defendants Nept and Perry

Here, Miner claims that Nept and Perry "knowingly endangered [his] life" when he "was beat and had [his] eyes goudged [sic] by officers[.]" Doc. 7 at 4.  Miner alleges that he had not been given orders with which to comply before this force was applied, and that he was "chained and shackled to a concrete slab" at the time the force was applied.  <u>Id.</u>  Thus, Miner's Eighth Amendment claims against Nept and Perry in their individual capacity for money damages and official capacity for injunctive relief survive § 1915A screening.

### ii.    Defendants Benting and Wasko

Miner alleges that Benting and Wasko participated in the alleged violation because Benting is "Responsible for the operations of this facility and for the welfare of all inmates assigned to her[,]" and because Wasko is "legally responsible for overall operations for each SDDOC institution[.]" <u>Id.</u> at 2.

Regarding Miner's claims against Benting and Wasko in their individual capacities for monetary relief, "a supervisor may be held individually liable under § 1983 if [she] directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1078 (8th Cir. 1996) (citing <u>Tilson v. Forrest City Police Dep't</u>, 28 F.3d 802, 806 (8th Cir. 1994)).  "Because § 1983 liability requires a causal link to, and direct responsibility for, the deprivation of rights, Plaintiffs must allege specific facts regarding [the supervisor's] personal involvement in, or direct responsibility for, the deprivation of their rights." <u>Armstrong v. City of Minneapolis</u>, 525 F.Supp.3d 954, 965 (citing <u>Clemmons v. Armontrout</u>, 477 F.3d 962, 967 (8th

Cir. 2007)) (internal quotation omitted). Here, Miner does not allege that the injury he suffered was a result of Benting or Wasko's personal involvement in or direct responsibility for the actions of Nept or Perry. Therefore, the individual capacity claims for money damages against Benting and Wasko are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

As for injunctive relief, personal involvement by defendant state officers is generally not required in a plaintiff's official capacity claim for injunctive relief; all that is required is that the defendant officers, "by virtue of [their] office[s], ha[ve] some connection" with the unconstitutional policy in question. See Ex parte Young, 209 U.S. 123, 157 (1908). But because the alleged constitutional violation is cruel and unusual punishment in violation of the Eighth Amendment and because punishment requires intent, some level of subjective knowledge is still required. See Farmer v. Brennan, 511 U.S. 825, 844 (1994). Other courts have held that this subjective component can be met through "the institution's historical indifference" rather than the knowledge held by a specific individual after that individual was substituted as the named official capacity defendant. LaMarca v. Turner, 995 F.2d 1526, 1542 (11th Cir. 1993); see also Alberti v. Sheriff of Harris Cnty., 978 F.2d 893, 894-95 (5th Cir. 1992) (per curiam) (finding "that the state knew" of severe overcrowding in Harris County jails); Terry ex rel. Terry v. Hill, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) (considering "the entire state of Arkansas, including the executive and legislative branches," to determine whether "the State ha[d] been deliberately indifferent to the needs of pretrial detainees" because defendant, "in his official capacity, . . . [was] merely a representative of . . . the State of Arkansas in the system of mental health treatment" (footnote omitted)).

At this stage of the proceeding, this Court finds that Miner has stated a plausible claim

that, while not personally involved in the unconstitutional violation, Benting and Wasko may

have had institutional awareness of the alleged excessive force occurring at the facility.  See

LaMarca 995 F.2d at 1542.  Therefore, Miner's claims against Benting and Wasko in their

official capacities for injunctive relief survive § 1915A screening.

### b.     Deliberate Indifference to Medical Needs Claims

Miner also brings claims against defendants alleging a "Deliberate Indifference" to his

"Right to Medical Care" in violation of his Eighth Amendment rights.  Doc. 7 at 5.  "[D]eliberate

indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton

infliction of pain' . . . proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97,

104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  "This is true whether the

indifference is manifested by prison doctors in their response to the prisoner's needs or by prison

guards in intentionally denying or delaying access to medical care or intentionally interfering

with the treatment once prescribed."  Id. at 104–05 (footnotes omitted).  "This conclusion does

not mean, however, that every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment."  Id. at 105.  "[A] prisoner must allege

acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs."  Id. at 106.  Allegations of negligence will not suffice, nor will mere disagreement with

treatment decisions.  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of

Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective

component.  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v.

Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).  The plaintiff "must demonstrate (1) that [he]

suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

### i.     Defendants Nept and Perry

Miner alleges sufficient facts to state a claim for deliberate indifference to serious medical needs against Nept and Perry. When he began to experience pain in his wrists from being handcuffed, Miner claims his requests for medical staff to complete a "restraint check" were denied by Nept and Perry. Doc. 1 at 4; Doc. 7 at 5. Additionally, Miner claims that a pool of blood began to form around him due to the sharp metal of the handcuffs "grinding against [his] arm[,]" which would suggest to those around him the existence of an objectively serious medical need. Doc. 1 at 5. Although some of his claims may be considered allegations of negligence, this Court cannot conclude at this stage that Miner's claims are wholly without merit. Thus, Miner's Eighth Amendment claims against Nept and Perry in their individual capacities for money damages and official capacities for injunctive relief survive § 1915A screening.

### ii.     Defendants Benting and Wasko

To state a claim against defendants Benting and Wasko in their individual capacities for monetary relief, Miner must allege that they directly participated in the constitutional violation or that their "failure to properly supervise and train the offending employee caused a deprivation of

11

constitutional rights." <u>Andrews</u>, 98 F.3d at 1078 (citation omitted). Miner does not allege that Benting or Wasko were aware that Miner had a medical need, and therefore that they deliberately disregarded Miner's medical needs. <u>Dulany</u>, 132 F.3d at 1239; <u>see generally</u> Docs. 1, 7. Because Miner provides no facts demonstrating that Benting and Wasko were directly involved in the violation, or that their failure to train or supervise their employees caused the deprivation of rights, his claims against Benting and Wasko in their individual capacities for monetary relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

While Miner makes no claims that Benting or Wasko were personally involved in the constitutional deprivation, he need only allege institutional awareness and indifference to state a claim for injunctive relief in their official capacities. <u>See</u> <u>LaMarca</u>, 995 F.2d at 1542. Miner includes Warden Benting in his complaint because she is "Responsible for the operations of this facility and for the welfare of all inmates assigned to her[,] and Wasko because she is "legally responsible for overall operations for each SDDOC institution[.]" Doc. 7 at 2. As pled, this court finds that Miner has established plausible institutional awareness and indifference on the part of Benting and Wasko. Therefore, Miner's claims against Benting and Wasko in their official capacities for injunctive relief survive § 1915A screening.

## III.    Motion to Appoint Counsel

Miner has also filed a motion for appointment of counsel. Doc. 3. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." <u>Stevens v.</u> <u>Redwing</u>, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. <u>Id.</u> At this time, Miner's claims do not appear to be complex, and he is able to investigate the

facts and present his claims adequately. This Court believes that Miner is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Doc. 3, is denied at this time.

## IV.    Conclusion

It is therefore ORDERED:

1.      That Miner's motion for leave to proceed in forma pauperis, Doc. 8, is granted.

2.      That the Clerk of Court shall send a copy of this order to the appropriate financial official at Miner's institution.

3.      That the institution having custody of Miner is directed that whenever the amount in Miner's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Miner's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

4.      That Miner's motion for appointment of counsel, Doc. 3, is denied.

5.      That Miner's claims against the defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

6.      That Miner's claims against the defendants in their individual capacities for injunctive relief are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

7.     That Miner's Eighth Amendment claims for monetary damages against Benting and Wasko in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(ii).

8.     That Miner's Eighth Amendment claims for injunctive relief against Benting and Wasko in their official capacities survive § 1915A screening.

9.     That Miner's Eighth Amendment claims against Nept and Perry in their individual capacities for money damages and official capacities for injunctive relief survive § 1915A screening.

10.     That the Clerk shall send four blank summons forms and Marshal Service Forms (Form USM–285) to Miner so that he may cause the complaint to be served upon the defendants, Nept, Perry, Benting, and Wasko.

11.     That Miner shall complete and send the Clerk of Courts summons and USM–285 forms for the defendants. Upon receipt of the completed summons and USM–285 forms, the Clerk of Court will issue the summons. If the completed summons and USM–285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

12.     That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaints, Docs. 1, 7, and this order, upon the defendants.

13.     That the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

14.     That Miner will keep the Court informed of his current address at all times. All

parties are bound by the Federal Rules of Civil Procedure and by the Court's Local

Rules while this case is pending.

DATED August 2‑7, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

15